UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re SCUDDER MUTUAL FUNDS
FEE LITIGATION

MASTER FILE:  04 CV 1921 (DAB)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

MORGAN, LEWIS & BOCKIUS LLP
Christopher P. Hall (CH 7220)
Todd D. Brody (TB 2869)
101 Park Avenue
New York, New York 10178
(212) 309-6000

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................... 1

The Parties .............................................................................................................. 2

The Claims and the Supporting Allegations ........................................................... 3

ARGUMENT ........................................................................................................... 5

I.     PLAINTIFFS LACK STANDING TO ASSERT CLAIMS CONCERNING
       FUNDS THAT THEY DO NOT OWN ......................................................... 5

II.    PLAINTIFFS' § 36(B) CLAIM IS WITHOUT SUPPORT ............................ 7

       A.     Section 36(b) Claims Cannot be Brought as Direct Claims ................... 7

       B.     Plaintiffs Fail to Allege Facts Concerning the Relevant Time Period ..... 8

       C.     Plaintiffs Allegations of Kickbacks and Other Improper Use of Advisory
              Fees Cannot Serve As the Basis of a § 36(b) Claim ........................... 11

              1.     Allegations That Advisory Fees Were Used to Fund Revenue
                     Sharing Agreements Do Not Give Rise to a § 36(b) Claim ........ 12

              2.     Allegations That Defendants Did Not Reimburse the Funds For
                     Benefits They Received From Revenue Sharing Agreements or
                     Soft Dollar Arrangements Do Not Give Rise to a § 36(b) Claim ..... 14

              3.     Allegations Concerning Economies of Scale Do Not Give Rise to a
                     Cause of Action under § 36(b). ............................................... 15

III.   PLAINTIFFS' § 48(A) CLAIM IS WITHOUT SUPPORT ........................... 16

       A.     No Private Right of Action Exists Under § 48(a) ............................... 17

       B.     Plaintiffs' § 48(a) Claim Is Derivative and Plaintiffs Failed to Make
              Demand on the Board and Cannot Demonstrate Demand Futility ....... 17

              1.     The Asserted Claim is Derivative .......................................... 17

              2.     Plaintiffs Did Not Make Demand on the Boards ..................... 18

C.    Plaintiffs Have Failed to Plead Control Under § 48(a)...........................................20

D.    The § 48(a) Claim Should Be Dismissed Because There Was No
Underlying Violation of the Investment Company Act.......................................................21

CONCLUSION..........................................................................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allen v. Wright,*
    468 U.S. 737 (1984).................................................................................6

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.,*
    No. 04 Civ. 4885 (SWK), 2005 U.S. Dist. LEXIS 24263 (S.D.N.Y. Oct. 19,
    2005), *vacated by, in part, on reconsideration,* 2006 U.S. Dist. LEXIS 939
    (S.D.N.Y. Jan. 11, 1006)...................................................................19, 21

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.,*
    04 Civ. 4885 (SWK), 2006 U.S. Dist. LEXIS 939 (S.D.N.Y. Jan. 11, 1006) ..... *passim*

*Daily Income Fund, Inc. v. Fox,*
    464 U.S. 523 (1984)...............................................................................7

*In re Davis Selected Mut. Funds Litig.,*
    No. 04 Civ. 4186 (MGC), 2005 U.S.Dist. LEXIS 23203 (S.D.N.Y. Oct. 11,
    2005) ...............................................................................................13, 17

*In re Eaton Vance Mut. Funds Fee Litig.,*
    380 F. Supp. 2d 222 (S.D.N.Y. 2005), *aff'd on reconsideration,* 403 F. Supp.
    2d 310 (S.D.N.Y. 2005) ........................................................................ *passim*

*In re Eaton Vance Mut. Funds Fee Litig.,*
    403 F. Supp. 2d 310 (S.D.N.Y. 2005).....................................................8, 11

*In re Evergreen Mut. Funds Fee Litig.,*
    No. 04 Civ. 4453 (RWS), 2006 U.S. Dist. LEXIS 12501 (S.D.N.Y. Mar. 24,
    2006) ................................................................................................ *passim*

*Fogel v Chestnutt,*
    533 F.2d 731 (2d Cir. 1975).................................................................14, 15

*Fogel v. Chestnutt,*
    668 F.2d 100 (2d Cir. 1981).................................................................14, 15

*In re Franklin Mut. Funds Fee Litig.,*
    388 F. Supp. 2d 451 (D.N.J. 2005) ........................................................ *passim*

*Gartenberg v. Merrill Lynch Asset Mgmt, Inc.,*
    694 F.2d 923 (2d Cir. 1982)................................................................2, 11

*In re Global Crossing, Ltd. Secs. Litig.,*

No. 02 Civ. 910, 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) ...................................20

*In re Goldman Sachs Mut. Funds Fee Litig.,*
No. 04 Civ. 2567 (NRB), 2006 U.S. Dist. LEXIS 1542 (S.D.N.Y. Jan. 17, 2006) .................................................................................................... *passim*

*Herman v. Steadman,*
50 F.R.D. 488 (S.D.N.Y. 1970) ...........................................................................6

*Iodice v. United States,* 289 F.3d 270 (4th Cir. 2002) ........................................20

*Kauffman v. Dreyfus Fund, Inc.,*
434 F.2d 727 (3d Cir. 1970 ................................................................................6

*Kramer v. Time Warner Inc.,*
937 F.2d 767 (2d Cir. 1991)................................................................................9

*Krantz v. Prudential Invs. Fund Mgmt. LLC,*
305 F.3d 140 (3d Cir. 2002)..............................................................................19

*Lewis v. Casey,*
518 U.S. 343 (1996)............................................................................................6

*In re Lord Abbett Mut. Funds Fee Litig.,*
407 F. Supp. 2d 616 (D.N.J. 2005) .........................................................8, 18, 21

*In re Merrill Lynch & Co. Research Reports Sec. Litig.,*
272 F. Supp. 2d 243 (S.D.N.Y. 2003).................................................................21

*Migdal v. Rowe Price- Fleming Int'l, Inc.,*
248 F.3d 321 (4th Cir. 2001) .......................................................................11, 19

*Mutchka v. Harris,*
373 F. Supp. 2d 1021 (C.D. Cal. 2005) ...............................................................8

*Olmsted v. Pruco Life Ins. Co. of N.J.,*
283 F.3d 429 (2d Cir. 2002)................................................................................7

*In re Oppenheimer Funds Fee Litig.,*
No. 04 Civ. 7022 (JSR),  2006 U.S. Dist. LEXIS 9882 (S.D.N.Y. Mar. 20, 2006) ...............................................................................................................13

*Rich v. Maidstone Fin.  Inc.,*
No. 98 Civ. 2569 (DAB), 2002 U.S. Dist. LEXIS 24510 (S.D.N.Y. Dec. 20, 2002) ...............................................................................................................20

*In re Royal Ahold N.V. Sec & ERISA Litig.,*
    351 F. Supp. 2d 334 (D. Md. 2004)................................................................20

*Verkouteren v. Blackrock Fin. Mgmt., Inc.,*
    No. 98 Civ. 4673 (WK), 1999 U.S. Dist. LEXIS 10892 (S.D.N.Y. July 20,
    1999) ........................................................................................................19

*Waldock v. M.J. Select Global, Ltd.,*
    No. 03 C 5293, 2005 U.S. Dist. LEXIS 38001 (N.D. Ill. Dec. 27, 2005) .................17

*Yampolsky v. Morgan Stanley Inv. Advisers Inc.,*
    No. 03 Civ. 5710 (RO), Civ. 5896 (RO), 2004 U.S. Dist. LEXIS 8573
    (S.D.N.Y. May 12, 2004)..................................................................................11

## STATE CASES

*Aronson v. Lewis,* 437 A.2d 805, 816 (Del. 1984) ............................................19

*Demoulas v. Demoulas Super Mkts., Inc.,*
    No. 03-3741 BLS, 2003 Mass. Super. LEXIS 272 (Mass. Super. Ct. Sept. 22,
    2003) ........................................................................................................18

*Demoulas v. Demoulas Super Mkts., Inc.,*
    No. 03-3741, 2004 Mass. Super. LEXIS 286 (Mass. Super. Ct. Aug. 2, 2004) .........19

*Harhen v. Brown,*
    431 Mass. 838, 844 (2000) ..............................................................................18

## STATUTES

Fed. R. Civ. P. 12(b) ..................................................................................1, 11

Fed. R. Civ. P. 23.1 ......................................................................................18

15 U.S.C. § 80a-2(a)(9)..................................................................................19

15 U.S.C. § 80a-35(b) .....................................................................................8

Mass. Ann. Laws ch. 182, § 2B ...................................................................18-19

The Defendants identified in the accompanying Notice of Motion, by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Consolidated Amended Class Action Complaint ("Compl." or the "Complaint"), pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This case is another of the numerous "revenue sharing" complaints filed over the past several years against various mutual fund families.  This Court should respectfully follow the analysis applied by Judges Koeltl, Cedarbaum, Buchwald, Kram, and Sweet in this district who have each dismissed complaints containing similar allegations against the Eaton Vance, Davis, Goldman Sachs, AllianceBernstein, and Evergreen mutual fund families.  While this Complaint contains more than one hundred paragraphs alleging wrongdoing and unlawful conduct in an attempt to circumvent the well-reasoned decisions of the courts that have already addressed these issues, this Court should not be distracted from the plain fact that the asserted claims are fatally flawed and should be dismissed with prejudice.  The allegations, though numerous, are insufficient to withstand a motion to dismiss.

Count I of the Complaint alleges that the Investment Adviser and Distributor Defendants (defined below) violated § 36(b) of the Investment Company Act ("ICA") by charging excessive fees.  This claim should be dismissed for the following reasons: (1) The express language of § 36(b) makes clear that any claim arising thereunder is derivative and must be brought on behalf of the fund.  Plaintiffs here attempt to set forth a direct claim, which is impermissible; (2) Because recovery under § 36(b) is expressly limited to actual damages resulting from the breach of fiduciary duty in the twelve months prior to commencement of the litigation, Plaintiffs must allege that the fees charged during this specific period were improper.  Plaintiffs have failed to allege that the fees charged between March 10, 2003, and March 10, 2004 (the date of the initial

filing of Plaintiffs' Complaint), were excessive, relying improperly on allegations that reach back to 1989 (fifteen years before the relevant time period); and (3) The law is well settled that a claim can be maintained under § 36(b) *only* if the fee charged is "so disproportionately large that it bears no reasonable relationship to the services rendered." *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982). Plaintiffs have failed to plead facts meeting the *Gartenberg* standard, alleging instead that fees received by Defendants were used for improper purposes.

Count II alleges that Deutsche Bank AG ("Deutsche Bank") violated § 48(a) of the ICA by virtue of the alleged violations of § 36(b) of the ICA set forth in Count I. This claim should also be dismissed for the following reasons: (1) no private right of action exists under § 48(a); (2) alternatively, § 48(a) is a derivative claim and Plaintiffs neither made demand on the funds' boards of trustees nor properly pleaded demand futility; (3) Plaintiffs have failed to adequately allege control by Deutsche Bank; and (4) because, for the reasons set forth above, the predicate § 36(b) claim should be dismissed, the control person claim must also be dismissed.

**The Parties**

The four named Plaintiffs in this case are identified as shareholders of the Scudder Blue Chip Class A Fund, the Scudder Preservation Plus Income Fund, and the Scudder Total Return Fund. (Compl. ¶¶ 15–17.) While the Complaint does not state when the named Plaintiffs purchased these shares, the Complaint alleges that they held such shares "at the commencement of this action and continue[] to hold shares . . . ." *Id.* The named Plaintiffs purport to represent a class of "all persons or entities who held shares in any of the Scudder Funds" on the date the action was commenced and who continue to hold any such shares. (Compl. ¶ 1.) The Complaint identifies three categories of Defendants: (1) the Parent Company (Deutsche Bank); (2) the Investment Advisers (Deutsche Asset Management, Inc. ("DAMI"), Deutsche Investment

Management Americas, Inc. ("DIMA"), and Scudder Investments); and (3) the Distributor, (Scudder Distributors, Inc. ("SDI")). [1]  (Compl. ¶¶ 18–23.)

### The Claims and the Supporting Allegations

In Count I, Plaintiffs allege that the Investment Adviser and Distributor Defendants breached their fiduciary duty under § 36(b) of the ICA because the investment advisory, Rule 12b-1 marketing, and service and administrative fees charged by the Defendants "were so disproportionately large that they bore no reasonable relationship to the services rendered" and "would not have been the result of an arm's-length negotiation." (Compl. ¶¶ 99–102.)  Plaintiffs further allege that, as a "direct, proximate and foreseeable result" of this alleged breach, they and the Scudder Funds incurred "many millions of dollars in damages." (Compl. ¶ 103.)

In support of the allegations in Count I, Plaintiffs allege the existence of revenue sharing relationships with broker-dealers, pursuant to which a portion of the advisory fees charged by Defendants were paid to broker-dealers "for the benefit of having increased access to [the broker-dealer's] sales force . . . ." (Compl. ¶¶ 46, 50.)  According to the Complaint, the reason Defendants entered into such agreements was because "[a]s a result of such activities, the aggregate net assets—against which the management fees were charged on a percentage basis—increased, with a consequent increase in the dollar amount of the advisory fees." (Compl. ¶ 52.)  Plaintiffs allege that "such programs were conducted in a way that violated SEC and NASD rules" (Compl. ¶ 53) and that the revenue sharing arrangements were used to "circumvent the limits placed on the use of Fund assets under 12b-1." (Compl. ¶ 54.)

Plaintiffs also allege that Defendants entered into soft dollar arrangements with broker-dealers, pursuant to which the broker-dealers provided bundled investment research and trade

---

[1] Plaintiffs name Scudder Investments as an Investment Adviser Defendant.  Scudder Investments is not a registered investment adviser or a corporate entity.  It is the marketing name that represents the alignment of Scudder with Deutsche Bank's mutual fund operations.

execution to Defendants.  (Compl. ¶ 59.)  While Plaintiffs do not allege that Defendants failed to

obtain best execution for the funds or that these soft dollar arrangements were unlawful,

Plaintiffs claim that Defendants "failed to reduce their advisory fee by an amount that

compensated the Funds for the fact that the Funds were now paying expenses that are normally

borne by the advisers.  The advisory fees were therefore excessive to the extent that they were

not adjusted down to compensate the Funds and their investors for bearing such additional

costs."  (Compl. ¶ 59.)

      In conclusory fashion, Plaintiffs allege that "the growth of assets under management by

Scudder has also generated substantial economies of scale to the great benefit of the Investment

Adviser and Distributor Defendants, which have not been passed on to the Funds and their

investors through lower fees, resulting in greatly increased expenses." (Compl. ¶ 71.)  To

demonstrate the purported concurrent growth of assets and expenses, Plaintiffs provide the

example of the Scudder Growth and Income Fund (Class A shares)—a fund that, notably, none

of the named Plaintiffs own.  According to the Complaint, "despite the fact that assets of [this

fund] increased from 23 to 32 million dollars from 2000 to 2003, the net asset value ('NAV') per

share of the fund fell from $26.86 in 2000 to $18.04 in 2003.  Yet during this same period,

expenses charged by Defendants increased, with the ratio of expenses jumping from 1.02% to

1.12% in 2003."  (Compl. ¶ 72.)  Plaintiffs, however, do not provide any factual basis to support

their allegation that economies of scale were achieved.  And notably, this contention directly

contradicts the allegation made elsewhere in the Complaint, that since 2002, the Scudder funds

have collectively experienced an outflow of $35 billion in assets.  (Compl. ¶ 32.)

      Moreover, despite the fact that damages for a § 36(b) are limited to the one year before

the action was instituted, 15 U.S.C. § 80a-35(b)(3), the allegations in the Complaint purposely

and impermissibly largely concern a different or unspecified time period or are vague with

respect to the time period covered.  As examples, paragraph 77 of the Complaint lists the

administrative fees paid by the Scudder Total Return Fund "between 2000 and 2002."  (Compl. ¶

77.)  Paragraph 73 of the Complaint compares the net assets under management and expense

ratio from 1989 to 2004 for the entire Scudder mutual fund family.  (Compl. ¶ 73.)  And the

Complaint quotes portions of the July 2001 Administrative Agreement between Scudder Blue

Chip Fund and Scudder Investments, Inc. and the July 2001 Shareholder Services Agreement

between the Scudder Blue Chip Fund and Scudder Distributors.  (Compl. ¶¶ 78–79.)

     In Count II, Plaintiffs allege that the Parent Company "directly and indirectly caused the

Investment Adviser and Distributor Defendants" to violate § 36(b) and, as a result of the

Investment Adviser and Distributor Defendants' alleged violation of § 36(b), the Parent

Company violated § 48(a) of the ICA.  (Compl. ¶¶ 105–08.)  Aside from the allegation that

"Deutsche Bank is the ultimate parent of the Defendants bearing the Deutsche and Scudder

name" (Compl. ¶ 18) and the conclusory allegation that "Deutsche Bank directly and indirectly

caused the Investment Adviser and Distributor Defendants to engage in the violations of the

Investment Company Act alleged herein" (Compl. ¶ 107), there are no allegations in the

Complaint that even suggest Deutsche Bank's involvement in this matter.

## ARGUMENT

## I.    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS CONCERNING FUNDS THAT THEY DO NOT OWN

     Plaintiffs are alleged to be shareholders of the Scudder Blue Chip Class A Fund, the

Scudder Preservation Plus Income Fund, and the Scudder Total Return Fund.  Despite the fact

that they only own shares of these three funds, Plaintiffs purport to assert claims on behalf of a

class of all persons or entities who held shares of **any Scudder fund** at the date of the

commencement of this action.  Plaintiffs lack standing to assert such claims.

Standing is grounded in Article III, Section 2 of the Constitution.  To have standing, Article III requires that a plaintiff (1) have a personal injury; (2) fairly traceable to the defendant's allegedly unlawful conduct; and (3) likely to be redressed by the requested relief. *Allen v. Wright*, 468 U.S. 737, 751 (1984) (citation omitted).  These requirements do not change even if the lawsuit is brought as a putative class action.  As the Supreme Court has stated:

> That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.

*Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citation and internal quotation marks omitted).

Courts repeatedly have held that under Article III, a plaintiff who does not own shares in a fund lacks standing to bring a class action on behalf of shareholders of that fund.  For example, in *Herman v. Steadman*, 50 F.R.D. 488, 489–90 (S.D.N.Y. 1970), the court held that a shareholder of one fund who asserted claims derivatively for allegedly illegal and excessive brokerage commissions and advisory fees could not bring an action on behalf of two other funds in which he did not own shares.  Similarly, in *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727 (3d Cir. 1970), the court held that a plaintiff who owned shares of four mutual funds could not assert claims on behalf of sixty-one similarly situated funds in which he did not own shares.  This analysis is particularly applicable to claims brought under § 36(b), which expressly limits shareholder standing to "a security holder" of a fund.

Because Plaintiffs do not own shares of each of the Scudder funds, their claims must be dismissed to the extent that they purport to be based upon funds whose shares they do not own. Moreover, to the extent that Plaintiffs allege facts concerning Scudder funds that they do not

own, those allegations should not be considered by this Court in determining whether Plaintiffs have stated a claim with respect to any of the funds in which they actually own shares.[2]

## II.   PLAINTIFFS' § 36(b) CLAIM IS WITHOUT SUPPORT

Plaintiffs' § 36(b) claim should be dismissed because:  (1) a § 36(b) claim is derivative and cannot be brought directly; (2) Plaintiffs have not sufficiently alleged that during the applicable time period, the fees charged by Defendants were so disproportionately large that they bore no reasonable relationship to the services provided; and (3) Plaintiffs' allegations concerning misuse of funds do not give rise to a claim under § 36(b).

### A.   Section 36(b) Claims Cannot Be Brought as Direct Claims

Section 36(b) states in relevant part:  "An action may be brought under this subsection . . . by a security holder of such registered investment company **on behalf of such company**. . . ." 15 U.S.C. § 80a-35(b) (emphasis added).  Because a private right of action under § 36(b) can only be asserted as a derivative claim, the class action in this case, which is pleaded as a direct or primary claim, must be dismissed.

In *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535 n.11 (1984), the Supreme Court unequivocally held that § 36(b) confers only a derivative right of action:

> [A]ny recovery obtained in a § 36(b) action will go to the company rather than the plaintiff.  See S. Rep. No. 91-184, p. 6 (1970); § 36(b)(3).  In this respect, a § 36(b) action is undeniably "derivative" in the broad sense of that word.

Following the *Fox* decision, courts that have addressed this issue regularly have held that § 36(b) claims are derivative and cannot be brought directly.  *See Olmsted v. Pruco Life Ins. Co.*

---

[2] Plaintiffs, for example, allege that several classes of the Scudder Cash Reserve Prime Fund and the Scudder Target 2013 Fund were closed to new investors, yet 12b-1 fees were still charged to shareholders. (Compl. ¶ 58). Because Plaintiffs do not own shares of these funds, these allegations are irrelevant to their claims and should not be considered. Even if the Court does consider these allegations, they do not give rise to a claim under § 36(b). *See In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04 Civ. 2567 (NRB), 2006 U.S. Dist. LEXIS 1542, at *36 (S.D.N.Y. Jan. 17, 2006) ("[B]y merely asserting that Rule 12b-1 fees were charged while the funds at issue were closed to new investors, plaintiffs have not alleged that the fees charged were disproportionate to the services rendered.")

*of N.J.*, 283 F.3d 429, 433 (2d Cir. 2002) ("Congress explicitly provided in § 36(b) of the ICA

for a private right of **derivative action** for investors in regulated investment companies alleging

that investment advisors breached certain fiduciary duties.") (emphasis added); *Mutchka v.

Harris*, 373 F. Supp. 2d 1021, 1025 (C.D. Cal. 2005) ("[T]he Mutchkas' [§ 36(b)] claim still

must fail because it has not been brought derivatively."); *In re Franklin Mut. Funds Fee Litig.*,

388 F. Supp. 2d 451, 467–68 (D.N.J. 2005) ("Count Three must be dismissed because § 36(b)

does not provide for a direct private right of action."), *reconsideration denied by* No. 04-CV-982

(WJM), 2005 U.S. Dist. LEXIS 36429 (D.N.J. Dec. 28, 2005); *In re Lord Abbett Mut. Funds Fee

Litig.*, 407 F. Supp. 2d 616, 632–33 (D.N.J. 2005) ("[A] Section 36(b) claim can be maintained

only as a derivative (as opposed to a direct) claim."); *cf. In re Eaton Vance Mut. Funds Fee

Litig.*, 403 F. Supp. 2d 310, 320 (S.D.N.Y. 2005) (noting "strong support" that a § 36(b) claim is

derivative and not direct).

**B.     Plaintiffs Fail to Allege Facts Concerning the Relevant Time Period**

Section 36(b)(3) provides that "No award of damages shall be recoverable for any period

prior to one year before the action was instituted."  15 U.S.C. § 80a-35(b)(3).  Because the

statute expressly provides that damages are limited to this one-year time period, the allegations

in the Complaint concerning the excessive fees must also relate to the one-year time period

preceding the filing of the Complaint.  Plaintiffs' allegations, which generally do not concern the

period between March 10, 2003, and March 10, 2004 (the date that Plaintiffs initially filed their

Complaint), are insufficient to state a claim under § 36(b) and the Complaint must, therefore, be

dismissed.

In *In re AllianceBernstein Mutual Fund Excessive Fee Litigation*, No. 04 Civ. 4885

(SWK), 2006 U.S. Dist. LEXIS 939, at *5–7 (S.D.N.Y. Jan. 11, 2006), the district court, on

reconsideration, held that the plaintiffs failed to state a claim under § 36(b) for excessive fees.

While plaintiffs had alleged that the advisors failed to pass along cost savings resulting from economies of scale, they failed to plead facts "demonstrating the existence of excessive advisory fees between June 22, 2003 and June 22, 2004," the year prior to the complaint being filed. *Id.* at *5. Moreover, the court held that statistics referring to financial trends outside of the relevant time period generally may not be used to demonstrate the existence of excessive advisory fees within the relevant time period as such information "would require the Court to make a dramatic extrapolation by inferring the existence of excessive fees without adequate supporting evidence in the Complaint." *Id.* at *6.

While Plaintiffs provide certain data in the Complaint in an effort to demonstrate that the fees were excessive, this data does not concern the limited time period at issue and, consequently, should not be considered. For example, the administrative fees charged for a fund between 2000 and 2002 are irrelevant to this claim. (Compl. ¶¶ 77–79.) Likewise comparisons of asset under management and fees charged in 2004 to assets and fees in **1989** (a fifteen-year time period) cannot serve as the basis for such a claim. (Compl. ¶ 73.)

In fact, the data contained in relevant public filings demonstrates that the fees charged for the funds owned by Plaintiffs went down during the time period at issue and that to the extent there were cost savings resulting from economies of scale, those savings were passed along to investors.[3] For example, from October 31, 2003, until October 31, 2004, the NAV for the Scudder Blue Chip Fund (Class A) increased to $17.30 from $15.24. Despite the fact that the net assets also increased for the fund during this same period of time ($349 million to $382 million), the ratio of expenses decreased from 1.19% to 1.13%. Contrary to the allegations of the

---

[3] This Court may consider information on a motion to dismiss that is contained in a publicly available report filed with the SEC. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–74 (2d Cir. 1991); *In re AllianceBernstein*, 2006 U.S. Dist. LEXIS 939, at *8 n.4.

Complaint, during the relevant time period the fund increased in net value and size, while the overall expense to shareholders was reduced.[4]   (Brody Declaration, Ex. A.)

Moreover, contrary to the allegations in the Complaint, the advisory fee was structured so that as the net assets of the funds increased, the percentage would be reduced.  This fee structure is set forth in the Statement of Additional Information ("SAI") for the Scudder Blue Chip Fund. (Brody Declaration, Ex. B.)

| Average Daily Net Assets | Scudder Blue Chip Fund |
|---|---|
| $0–$250 Million | 0.580% |
| $250 Million–$1 Billion | 0.550% |
| $1 Billion–$2.5 Billion | 0.530% |
| $2.5 Billion–$5.0 Billion | 0.510% |
| $5 Billion–$7.5 Billion | 0.480% |
| $7.5 Billion–$10 Billion | 0.460% |
| $10 Billion–$12.5 Billion | 0.440% |
| Over $12.5 Billion | 0.420% |

Similarly, from October 31, 2003, until October 31, 2004, the NAV for the Scudder Total Return Fund (Class A) increased to $8.68 from $8.44.  In addition, during this same time period, the ratio of expenses went down from 1.06 to 1.03. (Brody Declaration, Ex. C.)  Based on similar statistics, the *AllianceBernstein* court dismissed plaintiffs' § 36(b) claim, holding that such information demonstrated that savings generated by economies of scale were passed along to fund shareholders.  2006 U.S. Dist. LEXIS 939, at *8.

---

[4]  *See* Scudder Blue Chip Fund Prospectus, dated Feb. 1, 2005, at p. 27; Scudder Blue Chip Fund, Statement of Additional Information, dated Feb. 1, 2004, at pp. 22–23; Scudder Total Return Fund Prospectus, dated Feb. 25, 2005, at p. 21.  A copy of these Prospectuses and Statements of Additional Information are annexed respectively as Exhibits A, B, and C to the Declaration of Todd D. Brody ("Brody Declaration"), filed with this memorandum.

C.   **Plaintiffs' Allegations of Kickbacks and Other Improper Use of Advisory Fees Cannot Serve as the Basis of a § 36(b) Claim**

In addition to the fact that Plaintiffs' allegations do not concern the relevant time period, Plaintiffs' allegations of kickbacks and other incentives paid to broker-dealers to encourage future sales of fund shares do not give rise to a claim under § 36(b).

To state a claim under § 36(b), a plaintiff must allege that the defendant violated its fiduciary duty by receiving fees that were "so disproportionately large" that they bore "no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Gartenberg*, 694 F.2d at 928. Federal Rule of Civil Procedure 12(b)(6) requires "more than the mere recitation of boilerplate statutory language" to state a claim for a violation of § 36(b). *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 328 (4th Cir. 2001) (affirming dismissal of a § 36(b) claim). Moreover, "speculative, conclusory allegations of *36(b)* violations [are] insufficient to survive a motion to dismiss under *Rule 12(b)(6).*" *Yampolsky v. Morgan Stanley Inv. Advisers Inc.*, No. 03 Civ. 5710 (RO), Civ. 5896 (RO), 2004 U.S. Dist. LEXIS 8573, at *7 (S.D.N.Y. May 12, 2004); *In re Goldman Sachs*, 2006 U.S. Dist. LEXIS 1542, at *32 (" '[T]o survive a motion to dismiss, a complaint may not simply allege in a conclusory manner that advisory fees are "excessive." Instead, a plaintiff must allege facts that, if true, would support a claim that the fees at issue are excessive.' ") (citation omitted).

In *In re Eaton Vance Mutual Funds Fee Litigation*, 380 F. Supp. 2d 222, 237 (S.D.N.Y. 2005) (citations omitted), *adhered to on reconsideration*, 403 F. Supp. 2d 310 (S.D.N.Y. 2005), Judge Koeltl articulated the standard to be applied on a motion to dismiss a Section 36(b) claim:

> In order to state a claim under § 36(b), the plaintiffs must allege that the defendant violated its fiduciary duty under § 36(b) by receiving fees that were "so disproportionately large" that they bore "no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." To

make this determination, the Court should consider all pertinent facts, including: (1) the nature and quality of the services provided by the advisers to the shareholders; (2) the profitability of the mutual fund to the adviser-manager; (3) "fall-out" benefits; (4) the economies of scale achieved by the mutual fund and whether such savings were passed on to the shareholders; (5) comparative fee structures with other similar funds; and (6) the independence and conscientiousness of the mutual fund's outside trustees.

Applying this standard, the *Eaton Vance* court dismissed the complaint, stating: "Because the allegations in the [Second Amended Complaint] contain no specific facts that would provide a factual basis for an allegation that the fees were 'so disproportionately large' that the [sic] bore 'no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining,' the plaintiffs have failed to state a claim under 36(b)." *Id.* (citations omitted).

### 1. Allegations that Advisory Fees Were Used to Fund Revenue Sharing Agreements Do Not Give Rise to a § 36(b) Claim

In the Complaint, Plaintiffs allege the existence of revenue sharing relationships with broker-dealers, pursuant to which a portion of the advisory fees charged by defendants were paid to broker-dealers "for the benefit of having increased access to their [the broker dealer's] sales force . . . ." (Compl. ¶¶ 46, 50.) According to the Complaint, the reason Defendants entered into such agreements because "[a]s a result of such activities, the aggregate net assets – against which the management fees were charged on a percentage basis – increased, with a consequent increase in the dollar amount of the advisory fees." (Compl. ¶ 52.) Without any factual support, Plaintiffs also allege that the "management fee was inflated to pay for these expenses." (Compl. ¶ 46.) They also allege that "such programs were conducted in a way that violated SEC and NASD rules" (Compl. ¶ 53) and "pose[d] potential conflicts of interest." (Compl. ¶ 49.)

In a series of recent decisions, courts in this district have dismissed complaints alleging facts similar to those in the instant complaint. Most recently, in *In re Evergreen Mutual Funds Fee Litigation*, No. 04 Civ. 4453 (RWS), 2006 U.S. Dist. LEXIS 12501, at *19 (S.D.N.Y. Mar.

-12-

24, 2006) (emphasis added), Judge Sweet dismissed the complaint, rejecting plaintiffs' contention that a § 36(b) claim could be supported by allegations that the defendants charged **"management fees that were wrongfully inflated to cover other improper revenue sharing payments** that were ostensibly made from the assets of the Investment Adviser and Distributor Defendants." This is the exact allegation that Plaintiffs make in the instant case with respect to the revenue sharing agreements between Defendants and the broker-dealers.

Indeed, courts have held that allegations concerning the improper use of fees by the investment adviser do not give rise to a claim under § 36(b). *See In re Eaton Vance*, 380 F. Supp. 2d at 237 (holding that allegations that "the defendants authorized improper 12b-1 fees, soft dollar payments, and commissions to brokers [were] insufficient to allege a claim under 36(b), which addresses only the negotiation and enforcement of payment arrangements between investment advisers and funds, not whether investment advisers acted improperly in the use of the funds"); *In re Davis Selected Mut. Funds Litig.*, No. 04 Civ. 4186 (MGC), 2005 U.S. Dist. LEXIS 23203, at *9–10, 15 (S.D.N.Y. Oct. 11, 2005) (rejecting the application of § 36(b) to a complaint where the allegations were that "defendants used fees paid by the funds to compensate brokerage firms for steering new investors to the funds, and that the investment advisers, whose fees were calculated as a percentage of overall assets under management, benefited from the resulting increase in the funds' assets"); *In re Goldman Sachs*, 2006 U.S. Dist. LEXIS 1542, at *37–38 ("[P]laintiffs' allegations of 'kickbacks' do not constitute support for their allegations of excessive Rule 12b-1 fees.  Plaintiffs essentially argue that the fees were excessive because they were improper.  Such assertions are insufficient to establish that the Rule 12b-1 fees bore no reasonable relationship to the services rendered.").[5]

---

[5] *But see In re Oppenheimer Funds Fee Litig.*, No. 04 Civ. 7022 (JSR), 2006 U.S. Dist. LEXIS 9882 (S.D.N.Y. Mar. 13, 2006) (rejected as controlling authority by Judge Sweet in *In re Evergreen*, 2006 U.S. Dist. LEXIS 12501, at *20 n.4).

2.    **Allegations that Defendants Did Not Reimburse the Funds for Benefits Resulting from Revenue Sharing Agreements or Soft Dollar Arrangements Do Not Give Rise to a § 36(b) Claim**

Plaintiffs allege that the advisory fees in this case were excessive because Defendants failed to reduce their advisory fee for investment research and other services that they received from broker-dealers through soft dollar commissions. (Compl. ¶ 59.) These allegations are also not actionable under § 36(b).

In *Fogel v. Chestnutt*, 668 F.2d 100, 112 (2d Cir. 1981), the Second Circuit Court of Appeals addressed and rejected the applicability of § 36(b) to a derivative action brought against the investment adviser and several affiliated directors based upon similar allegations. As described in an earlier decision in that case, *Fogel v Chestnutt*, 533 F.2d 731, 735 (2d Cir. 1975), the complaint alleged that a portion of the commissions paid by the funds were being directed by the adviser from the executing broker to other non-executing brokers as a reward to those non-executing brokers for selling the fund. This practice was known as "give-ups." According to the complaint, the fund managers determined not to take actions to recapture the excess commissions because they wanted to continue to give incentives to the brokers who sold the funds, resulting in greater fund assets under management and, therefore, greater management fees. *See id.* at 737.

> There was an obvious tension between the give-up and those representations made by the investment company in its prospectuses which investors would be likely to understand as meaning that the amounts paid to the investment adviser constituted the fund's cost for management and investment advice and, in the case of "load" funds, that the amounts retained by the distributor constituted the cost of sales. In fact, the management-directed "give-ups" to non-executing brokers represented additional amounts that were being paid for advising, selling or both, and the true costs of these services were thus higher than the advisory fee or the sales load. **To the extent that a management company restricted its own research because of what was being furnished by brokers who were rewarded with give-ups or that a distributor retained for itself a larger part of the sales load than would have been competitively feasible in the absence of give-ups, the stipulated management fees yielded greater profits than they otherwise would have.**

*Id.* at 735 (emphasis added).

> The Second Circuit concluded that § 36(b) would not apply to this claim:

> The present action is not one "for breach of fiduciary duty in respect of . . . compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person" to which § 36(b) applies.  It is rather for breach of the fiduciary duty to make a full disclosure to the independent directors of opportunities available to the Fund, **even though a motivation for and the effect of the nondisclosure were to increase the gross fees by stimulating growth of the Fund and the net fees both by this and by obtaining from brokers "research" services which the Adviser would otherwise have had to supply at its own cost.**

668 F.2d at 112 (emphasis added); *see also In re Evergreen*, 2006 U.S. Dist. LEXIS 12501, at *19–22 (dismissing § 36(b) claim and rejecting plaintiffs' argument that the fees were excessive because the investment advisors failed to reduce their management fees to reflect the benefits they might have obtained as a result of payments to brokers).

In sum, the Second Circuit Court of Appeals rejected the notion that a claim under § 36(b) can be based upon the failure of a defendant to reimburse management fees that were intended to be used for the adviser's costs, but which costs were not incurred because the services were otherwise provided, even at the funds' expense.

### 3.   Allegations Concerning Economies of Scale Do Not Give Rise to a Cause of Action under § 36(b)

In an effort to breathe life into their claims, Plaintiffs make several conclusory allegations concerning the purported failure of Defendants to pass along savings that resulted from economies of scale—one of the six *Gartenberg* factors that courts consider in evaluating a claim brought under § 36(b). *E.g. In re Evergreen*, 2006 U.S. Dist. LEXIS 12501, at *18.  In essence, Plaintiffs claim that the size of funds increased; therefore, economies of scale must have been achieved.  Notably, Plaintiffs at the very same time also allege that the Scudder funds

-15-

"experienced an outflow of $35 billion in assets" starting in 2002, an allegation that directly contradicts their conclusion that economies of scale must have been achieved.

Setting aside the contradicting allegations, these same allegations were rejected by the court in *In re Goldman Sachs*, 2006 U.S. Dist. LEXIS 1542, at *34–35 (footnote omitted), which held that:

> Mere assertions that fees increased with the size of the Funds are not enough to establish that the benefits from economies of scale were not passed on to investors. *See Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1238 (S.D.N.Y. 1990) ("Plaintiffs in prior cases have argued in substance that since a fund increased dramatically in size, economies in scale must have been realized. The courts reject this argument.").

The *Goldman Sachs* court also rejected plaintiffs' argument that "if no economies of scale were achieved, then the Rule 12b-1 fees yielded no benefits and therefore should have been discontinued. We find no support for the assertion that the failure to achieve economies of scale during the period in question necessarily would require such measures." *Id.* at *34 n.24.

Plaintiffs have not made any specific allegations demonstrating that economies of scale were, in fact, achieved in the Scudder funds in which they owned shares. Moreover, as set forth above, Plaintiffs ignore the fact that built into the advisory fee structure were breakpoints for the purpose of passing on economies of scale. Plaintiffs' conclusory allegations concerning economies of scale do not give rise to a claim.

For the reasons set forth herein, this Court should dismiss Plaintiffs' § 36(b) claim with prejudice.

## III.    PLAINTIFFS § 48(a) CLAIM IS WITHOUT SUPPORT

Plaintiffs' § 48(a) claim should be dismissed because (1) there is no private right of action under § 48(a); (2) Plaintiffs' alleged injuries under § 48(a) can only be addressed in a derivative action and Plaintiffs have failed to make the requisite demand on the fund trustees or

demonstrate that demand would have been futile; (3) Plaintiffs have failed to allege control

except in the most conclusory fashion; and (4) the control person claim cannot survive if the

predicate claim under § 36(b) is dismissed.

### A.    No Private Right of Action Exists Under § 48(a)

Plaintiffs' claim against Deutsche Bank must be dismissed because there is no private

right of action under § 48(a).  *See In re Eaton Vance*, 380 F. Supp. 2d at 231–33 (Koeltl, J.); *In

re Davis*, 2005 U.S. Dist. LEXIS 23203, at *9 ("In a thoughtful and persuasive opinion, . . .

Judge Koeltl held that there are no private rights of action under Sections 34(b), 36(a), and 48(a)

of the ICA and dismissed the claims asserted under those provisions.  I adopt Judge Koeltl's

reasoning and accordingly dismiss [the claims based upon these sections]."); *In re Goldman

Sachs*, 2006 U.S. Dist. LEXIS 1542, at *15 n.8, 39 n.29; *In re Evergreen*, 2006 U.S. Dist. LEXIS

12501, at *24 n.5; *Waldock v. M.J. Select Global, Ltd.*, No. 03 C 5293, 2005 U.S. Dist. LEXIS

38001, at *28–33 (N.D. Ill. Dec. 27, 2005) (no private right of action under § 48(a)).

### B.    Plaintiffs' § 48(a) Claim Is Derivative and Plaintiffs Failed to Make Demand on the Board and Cannot Demonstrate Demand Futility

Even if this Court finds that there is private right of action under § 48(a), the claim

against Deutsche Bank still must be dismissed because it is a derivative claim that cannot be

brought directly and Plaintiffs have failed to make demand on the funds' boards of trustees or

allege that demand would have been futile.

### 1.    The Asserted Claim Is Derivative

An action under § 48(a) alleging that investors were charged excessive advisory fees,

Rule 12b-1 fees, and service and administrative fees must be brought derivatively.  *See In re

Eaton Vance*, 380 F. Supp. 2d at 234–36 (§ 48(a) claim must be brought derivatively when

premised upon "the misuse of [fund] assets to provide excessive compensation to brokers,

improper 12b-1 plans, and soft dollar compensation to brokers"); *In re Franklin*, 388 F. Supp. 2d at 462–64 (§ 48(a) claim must be dismissed because claim based upon "(1) excessive advisory fees; (2) excessive 12b-1 marketing fees; (3) excessive director compensation; and (4) payments to brokerage firms (directed brokerage, excessive commissions, soft dollars, revenue sharing)" are all derivative injuries); *In re Lord Abbett*, 407 F. Supp. 2d at 625–26 (§ 48(a) claim based upon excessive fees or poor fund performance is derivative). Like the plaintiffs in the above cases, Plaintiffs here premise their § 48(a) claim upon injuries resulting from excessive advisory fees, Rule 12b-1 fees, and service and administrative fees. The above cases require that these injuries be addressed in a derivative suit and meet all requirements for a derivative action.

### 2.   Plaintiffs Did Not Make Demand on the Boards

Under Massachusetts law,[6] demand must be made on a fund's board of trustees prior to commencement of a derivative suit, unless making demand would be futile. *See Harhen v. Brown*, 431 Mass. 838, 844 (2000); *In re Eaton Vance*, 380 F. Supp. 2d at 239 (applying Massachusetts law). Plaintiffs incontestably did not make demand on the boards of trustees of the respective funds they owned before commencing this action.

Nor have Plaintiffs adequately pleaded demand futility. Demand will be excused as futile if the Complaint "[pleads] 'with **particularity'** " that a " '**majority** of [the board] participated in the wrongdoing, or [is] otherwise interested.' " *Demoulas v. Demoulas Super Mkts., Inc.*, No. 03-3741 BLS, 2003 Mass. Super. LEXIS 272, at *16–21 (Mass. Super. Ct. Sept. 22, 2003) (quoting Fed. R. Civ. P. 23.1; *Harhen*, 431 Mass. at 844) (emphasis added); *In re Eaton Vance*, 380 F. Supp. 2d at 239.

Indeed, under Massachusetts law, trustees are deemed to be independent and disinterested. *See* Mass. Ann. Laws ch. 182, § 2B ("A trustee . . . who . . . is not an interested

---

[6] The Funds in this case are Massachusetts business trusts.

person, as defined in [the ICA], shall be deemed to be independent and disinterested when making any determination or taking any action as a trustee."); *In re Eaton Vance*, 380 F. Supp. 2d at 239. Likewise, the ICA contains an explicit statutory presumption of director independence, under which a "natural person shall be presumed not to be a controlled person." 15 U.S.C. § 80a-2(a)(9) (2006); *In re AllianceBernstein*, 2006 U.S. Dist. LEXIS 939, at *9–10; *Midgal*, 248 F.3d at 329–30.

Plaintiffs cite certain facts to suggest that the trustees in this case were beholden to the advisers. These allegations have all been rejected in recent decisions as insufficient to demonstrate demand futility. For example, a director is neither interested nor controlled by a fund complex's investment adviser by virtue of serving on the boards of multiple funds within that complex, or by receiving substantial compensation in connection with those positions. *See Midgal*, 248 F.3d at 330–31; *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 143–44 (3d Cir. 2002); *Verkouteren v. Blackrock Fin. Mgmt., Inc.*, No. 98 Civ. 4673 (WK), 1999 U.S. Dist. LEXIS 10892, at *6–10 (S.D.N.Y. July 20, 1999); *In re Franklin*, 388 F. Supp. 2d at 470; *see also In re AllianceBernstein*, 2006 U.S. Dist. LEXIS 939, at *9–11 (discussing prior applications of the ICA's statutory presumption of director independence).

Nor is the source of the trustees' appointment to the board sufficient to demonstrate interest or control: "[I]t is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election. That is the usual way a person becomes a corporate director." *Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *see Demoulas v. Demoulas Super Mkts., Inc.*, No. 03-3741, 2004 Mass. Super. LEXIS 286, at *41 (Mass. Super. Ct. Aug. 2, 2004); *In re Eaton Vance*, 380 F. Supp. 2d at 239–40 (applying *Demoulas*); *In re AllianceBernstein*, No. 04 Civ. 4885 (SWK), 2005 U.S. Dist. LEXIS 24263, at *32 (S.D.N.Y. Oct. 19, 2005)

(applying *Demoulas*), *vacated by, in part, on reconsideration*, 2006 U.S. Dist. LEXIS 939 (S.D.N.Y. Jan. 11, 1006).

Because Plaintiffs have failed to make a demand on the boards of the Scudder funds, and have not shown that demand should be excused under Massachusetts law, the § 48(a) claim should be dismissed.

### C.    Plaintiffs Have Failed to Plead Control Under § 48(a)

A control person claim must be dismissed where plaintiffs merely plead legal conclusions instead of "*facts* sufficient to *state* elements of such a claim." *See Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002); *see also Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569 (DAB), 2002 U.S. Dist. LEXIS 24510, at *35–36 (S.D.N.Y. Dec. 20, 2002) ("A complaint must allege facts from which it can be inferred that the defendant had actual power or influence over the controlled person. However, pleading officer or director status alone is not enough. Similarly, pleading legal conclusions do not suffice.") (citations omitted); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 409 (D. Md. 2004) (Plaintiffs must plead "facts from which it can reasonably be inferred [that] the defendant was a control person.") (citations and quotation marks omitted). Merely reciting generalities while liberally deploying the word "control" is insufficient. *See In re Global Crossing, Ltd., Sec. Litig.*, No. 02 Civ. 910 (GEL), 2005 U.S. Dist. LEXIS 16228, at *38–39 (S.D.N.Y. Aug. 8, 2005) ("Conclusory allegations of control are insufficient as a matter of law.").

In the instant case, there are no allegations that Deutsche Bank controlled any of the Adviser or Distributor Defendants in connection with any of the allegations contained in the Complaint. The sole allegation is that Deutsche Bank is the "ultimate parent of the Defendants bearing the Deutsche and Scudder name . . . ." (Compl. ¶ 18.) These allegations are insufficient to serve as the basis of a control person claim.

-20-

D.      **The § 48(a) Claim Should Be Dismissed Because There Was No Underlying Violation of the Investment Company Act**

As set forth above, Plaintiffs' § 36(b) claim should be dismissed because (1) the claim was brought directly; (2) Plaintiffs have failed to allege any excessive fees during the relevant time period; and (3) Plaintiffs' allegations of misuse of fees do not give rise to a claim under § 36(b).  Because Plaintiffs have not stated a valid underlying ICA claim against any person allegedly controlled, the control person claim should also be dismissed.  *See In re Evergreen*, 2006 U.S. Dist. LEXIS 12501, at *23–25; *In re Goldman Sachs*, 2006 U.S. Dist. LEXIS 1542, at *38–39; *In re AllianceBernstein*, 2005 U.S. Dist. LEXIS 24263, at *26; *In re Merrill Lynch & Co., Inc., Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 264 (S.D.N.Y. 2003); *In re Lord Abbett*, 407 F. Supp. 2d at 633–34; *In re Franklin*, 388 F. Supp. 2d at 469.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Consolidated Amended Complaint fails to state a claim and therefore should be dismissed in its entirety, with prejudice.

Dated: March 31, 2006

Respectfully Submitted,

**MORGAN, LEWIS & BOCKIUS**


By: /s/ Todd D. Brody
Christopher P. Hall (CH 7220)
Todd D. Brody (TB 2869)
101 Park Avenue
New York, New York 10178
(212) 309-6000


*Attorneys for Defendants*

-21-